## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **GOTTSCHALKS INC., a Delaware corporation,**[1] | ) | **Case No. 09-10157 (KJC)** |
| | ) | |
| Debtor. | ) | Objection Deadline: January 13, 2010 at 4:00 p.m. |
| | ) | Hearing: January 20, 2010 at 10:00 a.m. |

**MOTION OF DEBTOR AND DEBTOR IN POSSESSION FOR
AN ORDER (A) APPROVING PROPOSED DISCLOSURE STATEMENT
FOR DEBTOR'S CHAPTER 11 PLAN OF LIQUIDATION, DATED
AS OF DECEMBER 3, 2009; (B) ESTABLISHING PROCEDURES
FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT
OR REJECT PROPOSED CHAPTER 11 PLAN OF LIQUIDATION AND
(C) SCHEDULING A HEARING ON CONFIRMATION OF
PROPOSED CHAPTER 11 PLAN OF LIQUIDATION AND
APPROVING RELATED NOTICE PROCEDURES**

The above-captioned debtor and debtor in possession (the "Debtor") hereby submits this motion (the "Motion") for the entry of an order: (i) approving the Debtor's Disclosure Statement for Debtor's Chapter 11 Plan of Liquidation, Dated as of December 3, 2009 [Docket No. 1292] (as it may be amended, the "Disclosure Statement") pursuant to section 1125 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"); (ii) establishing procedures for the solicitation and tabulation of votes to accept or reject the proposed Chapter 11 Plan of Liquidation [Docket No. 1291] (as it may be amended, the "Plan"),[2] including approval of (a) the forms of ballots for submitting votes on the Plan, (b) the deadline for the submission of ballots, (c) the contents of the proposed solicitation packages to be distributed to creditors and other parties in interest in connection with the solicitation of votes on

---

[1] The Debtor in this case, along with the last four digits of the federal tax identification number for the Debtor, is Gottschalks Inc. (9791). The Debtor's corporate offices are located at 7 River Park Place East, Fresno, California 93720.

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

the Plan (collectively, the "Solicitation Packages"), (d) the proposed record date for Plan voting, and (e) certain related relief; and (iii) scheduling a hearing on confirmation of the Plan (the "Confirmation Hearing") and approving related notice procedures.  In support of the Motion, the Debtor respectfully represents as follows:

### Jurisdiction

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

2.      The Debtor is a diversified retailer, recently operating as many as fifty-eight (58) full-line department stores and three (3) specialty stores in six western states: California, Washington, Alaska, Oregon, Idaho and Nevada.  It was founded in 1904 in Fresno, California, and expanded within California and the western states.  The Debtor's stores operated under the "Gottschalks" and "Village East" names and were generally large, free-standing and mall-based outlets of between 30,000 and 200,000 square feet, primarily located in mid-sized cities that are otherwise underserved by the larger national chains.

3.      As of the Petition Date (as defined below), the Debtor employed more than 5,282 full time and part time employees.  Of its 61 retail locations, the Debtor owned 5 stores and leased the balance.  The Debtor is publicly owned.  One of its largest investors is The Harris Company ("Harris"), which sold certain stores to the Debtor in 1998 and is an affiliate of Spanish retailer El Corte Ingles.

4.      The Debtor as borrower, the lenders party thereto and General Electric Capital Corporation, as administrative agent and collateral agent ("GECC"), were parties to that certain Second Amended and Restated Credit Agreement dated as of September 26, 2007 (as

amended, the "GECC Facility"). The obligations under the GECC Facility were secured by a lien in most of the Debtor's assets including inventory, accounts receivable, equipment, most (but not all) of its real property, and intellectual property (among other things). The Debtor's principal unsecured obligations consisted of, among others, a note in favor of Harris with an outstanding principal amount of approximately $16 million and approximately $29 million owed to its trade vendors.

5.      In November 2008, the Debtor signed an agreement with Everbright Development Overseas Securities, Ltd., a British Virgin Islands corporation ("Everbright"). Everbright agreed to invest up to $30 million in exchange for common stock of the Debtor. The Everbright transaction was subject to a diligence condition through December 15, 2008.

6.      Shortly after the Everbright agreement was signed, the Debtor was advised that (a) new, lower appraisals conducted by independent appraisers of the value of the Debtor's inventory and other assets that comprise the "borrowing base" and control the Debtor's asset-based credit facility agented by General Electric Capital Corporation ("GECC") and (b) reserves due to a decline in the Debtor's same-store sales trends in the current retail environment would lead to a reduction in the Debtor's liquidity compared to budget under its credit line ranging from approximately $18 million in December 2008 to a projected $12 million in January, 2009. The Debtor had not anticipated the adjustments at the time it entered the proposed transactions with Everbright. GECC agreed to delay certain of the adjustments in availability under the credit facility for a period of time.

7.      Everbright subsequently advised the Debtor that it was unable to go forward with its proposed investments, at least as it was previously structured. The Debtor attempted to modify the amount of the proposed investment from Everbright or raise additional

capital from third parties (principally its existing investor, Harris). However, the Debtor's efforts to secure such infusion of funds outside of a chapter 11 proceeding were ultimately unsuccessful, and its sales (like those of virtually all retailers) continued to be impacted by the very weak retail and credit environment. The combination of these factors (and the resulting impact on its access to cash and its line of credit) resulted in the filing of the Debtor's chapter 11 case.

8.     The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on January 14, 2009 (the "Petition Date"). A syndicate of lenders, for which GECC is agent, agreed to provide post-petition financing to the Debtor and consented to the use of cash collateral. The post-petition financing arrangement (the "DIP Loan Facility") provided the Debtor with cash advances and other extensions of credit in an aggregate principal amount not to exceed $125 million. The DIP Loan Facility contemplated a sale of the Debtor's business within approximately 80 days of the Petition Date.

9.     On March 30, 2009, an auction of substantially all of the Debtor's inventory and equipment took place and, on April 1, 2009, an order approving the winning bid was entered (as amended by an amended order entered April 7, 2009, the "Sale Order") [Docket Nos. 349, 374]. Pursuant to the terms of the Sale Order and the Agency Agreement (as defined in the Sale Order), the Debtor's inventory was liquidated via store closing sales ("Store Closing Sales"), which concluded on or before July 15, 2009.

10.    In an effort to maximize the value of the Debtor's remaining leasehold interests (the "Leases"), the Debtor filed the Motion for an Order: (A) Setting (1) Date to Conduct Auction of Debtor's Interests in Nonresidential Real Property Leases, and (2) Hearing Date for Approval of Auction; (B) Approving Bid Procedures and Terms of Auction; (C) Establishing Cure Amounts; (D) Authorizing Debtor to Enter into Lease Termination

Agreements; (E) Approving Abandonment of Personal Property; (F) Approving and Authorizing Sale of Leases to Highest or Best Bidder Free and Clear of all Liens, Interests, Claims and Encumbrances Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code; (G) Waiving the Requirements of Federal Rules of Bankruptcy Procedure 6004(g) and 6006(d); and (H) Granting Related Relief [Docket No. 422] (the "Initial Real Property Sale Motion") on April 21, 2009, and on May 18, 2009, the Debtor filed its Motion of the Debtor and Debtor in Possession to (I) Approve Certain Bid Protections in Connection With the Debtor's Proposed Sale of the Debtor's Interests in Its Nonresidential Real Property and (II) Supplement Real Property Sale Motion [Docket No. 526], (the "Supplemental Real Property Motion" and, together with the Initial Real Property Sale Motion, the "Real Property Sale Motion") by which it proposed an auction and sale process with respect to the Leases. The Real Property Sale Motion further advised that the Debtor reserved the right to sell other assets as part of the sale, including without limitation owned real property. On May 11, 2009, the Court held a hearing (the "May 11 Hearing") on the Bidding Procedures proposed in the Real Property Sale Motion. Based on the record of the May 11 Hearing, the Debtor prepared an order approving the proposed Bidding Procedures (the "Bid Procedures Order") and submitted the same to the Court under certification of counsel.

11.    On May 19, 2009, the Bankruptcy Court entered its Order Approving Debtor's Motion for Order: (A) Setting (1) Date to Conduct Auction of Debtor's Interests in Nonresidential Real Property Leases, and (2) Hearing Date for Approval of Auction; (B) Approving Bid Procedures and Terms of Auction; (C) Establishing a Hearing Date for Cure Amounts; and (D) Approving Abandonment of Personal Property [Docket No. 529] (the "Procedures Order"). Pursuant to the Procedures Order, the Debtor held an auction (the "Auction") on May 28, 2009 at the offices of O'Melveny & Myers LLP, Two Embarcadero

Center, 28th Floor, San Francisco, California 94111.

12.    On May 28, 2009, the Debtor filed its *Notice of Successful Bidder* [Docket No. 575], pursuant to which it announced that Forever 21 Retail, Inc. ("Forever 21") and Macy's Department Stores, Inc. ("Macy's") were selected as the Successful Bidders with respect to certain of the Debtor's Leases and Owned Real Property of the Debtor.  The Court approved the sale of certain of the Debtor's assets to Forever 21 and Macy's in its *Order Approving and Authorizing Assumption and Assignment of Certain Leases and Contracts and Sale of Certain Owned Real Property to Forever 21 Retail, Inc. Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code* [Docket No. 623] (the "Forever 21 Sale Order") and *Order Approving and Authorizing Assumption and Assignment of Certain Leases and Contracts to Macy's Department Stores, Inc. Pursuant to Sections 105, 363(b), (f) and (m) and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014* [Docket No. 624] (the "Macy's Sale Order"), respectively.

13.    At the conclusion of the May 28, 2009 proceedings in San Francisco, the Debtor continued the Auction with respect to the Leases not assumed and assigned or terminated and the Owned Real Property not sold.  *See* Forever 21 Sale Order at ¶ 15; Macy's Sale Order at ¶ 13.

14.    The Debtor has since sold or rejected almost all of its remaining Leases and sold several parcels of its remaining Owned Real Property in various sales conducted as part of the continued Auction pursuant to the terms of the Procedures Order.

### Request for Approval of the Disclosure Statement

15.    The Debtor requests that the Disclosure Statement be approved as providing "adequate information" in accordance with section 1125 of the Bankruptcy Code.  For

the reasons described below, the Debtor submits that such approval is warranted and appropriate.

### *Notice of the Disclosure Statement Hearing*

16.    On December 3, 2009, the Debtor filed its Plan and the related Disclosure

Statement.  The Plan provides a mechanism to complete the administration of the Debtor's

chapter 11 estate now that substantially all of the Debtor's assets have been sold.  Among other

things, the Plan would appoint an independent director to oversee the winddown of the estate.

17.    Rule  3017(a)  of  the  Federal  Rules  of  Bankruptcy  Procedure

(the "Bankruptcy Rules") provides as follows:

> [A]fter  a  disclosure  statement  is  filed  in  accordance  with
> [Bankruptcy] Rule 3016(b), the court shall hold a hearing on at
> least  28  days'  notice  to  the  debtor,  creditors,  equity  security
> holders  and  other  parties  in  interest  as  provided  in  [Bankruptcy]
> Rule 2002 to consider the disclosure statement and any objections
> or modifications thereto.  The plan and the disclosure statement
> shall be mailed with the notice of the hearing only to the debtor,
> any trustee or committee appointed under the [Bankruptcy] Code,
> the Securities and Exchange Commission and any party in interest
> who requests in writing a copy of the statement or plan. . . .

Fed. R. Bankr. P. 3017(a).  In addition, Bankruptcy Rule 2002(b) requires notice by mail to the

trustee, all creditors and indenture trustees of the time set for filing objections to, and the hearing

to consider approval of, a disclosure statement.  Bankruptcy Rule 2002(d) requires that equity

security holders be given notice of the foregoing in the manner and the form directed by the

Court.

18.    In accordance with these requirements, on or before December 8, 2009,

the Debtor mailed a copy of a notice in the form attached hereto as Exhibit A (the "Disclosure

Statement Notice") by first class mail to the following parties: (a) all persons or entities that have

filed proofs of claim or equity interests, which have been docketed on or before the date of the

Disclosure Statement Notice; (b) all persons or entities listed in the Debtor's Schedules of Assets and Liabilities, as holding liquidated, contingent, undisputed claims, and lists of equity security holders; (c) any other known holders of claims against or equity interests in the Debtor; and (d) all other parties in interest that have filed requests for notice pursuant to Bankruptcy Rule 2002 in the Debtor's chapter 11 case. Among other things, the Disclosure Statement Notice identifies the date, time and place of the hearing on the Disclosure Statement (the "Disclosure Statement Hearing") and the deadline and procedures for asserting objections to the approval of the Disclosure Statement.[3]

19.    The Debtor submits that the foregoing procedures provide adequate notice of the Disclosure Statement Hearing and, accordingly, requests that the Court approve such notice as appropriate and in compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

### *The Disclosure Statement Contains Adequate Information*

20.    Under section 1125 of the Bankruptcy Code, a debtor must provide its creditors and interest holders with "adequate information" regarding the debtor's proposed plan:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's

---

[3] In particular, the Disclosure Statement Notice provides that objections or proposed modifications to the Disclosure Statement, if any, must: (a) be in writing; (b) state the name and address of the objecting party and the nature of the claim or interest of such party; (c) state with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the Disclosure Statement to resolve any such objection or response, (d) be filed, together with proof of service, with the Court and served so as to be actually received on or before 4:00 p.m. (Eastern Standard Time) on January 13, 2010 by the counsel to the Debtor, counsel to the Official Committee of Unsecured Creditors, and the Office of the United States Trustee. Requiring that objections and proposed modifications to the Disclosure Statement be filed and served no later than such date and time is in compliance with Bankruptcy Rule 2002(b)(1) and will afford the Court and the Debtor sufficient time to consider the objections and proposed modifications before the Disclosure Statement Hearing.

> books and records, including a discussion of the potential material
> Federal tax consequences of the plan to the debtor, any successor
> to the debtor, and a hypothetical investor of the relevant class of
> claims or interests in the case, that would enable such a
> hypothetical investor of the relevant class to make an informed
> judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).   Thus, a debtor's disclosure statement must, as a whole, provide

information that is "reasonably practicable" to permit an "informed judgment" by creditors and

interest holders entitled to vote on the debtor's plan.  See In re Zenith Electronics Corp.,

241 B.R. 92, 99-100 (Bankr. D. Del. 1999); In re Dakota Rail, Inc., 104 B.R. 138, 142 (Bankr. D.

Minn. 1989); In re Copy Crafters Quickprint Inc., 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988)

(adequacy of a disclosure statement is to be determined on a case-specific basis under a flexible

standard that can promote the chapter 11 policy of fair settlement through a negotiation process

between informed interested parties).

        21.     A court has broad discretion in determining whether a disclosure statement

contains adequate information.  See Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec.

Power Coop.), 150 F.3d 503, 518 (5th Cir. 1998), cert. denied, 119 S. Ct. 2019 (1999); Texas

Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.), 844 F.2d 1142, 1157 (5th Cir.

1988); In re River Village Assocs., 181 B.R. 795, 804 (E.D. Pa. 1995); see also Dakota Rail, 104

B.R. at 143 (court has "wide discretion to determine . . . whether a disclosure statement contains

adequate information without burdensome, unnecessary and cumbersome detail").

        22.     Accordingly, the determination of the adequacy of information in a

disclosure statement must be made on a case-by-case basis, focusing on the unique facts and

circumstances of each case.  In that regard, courts generally examine whether a disclosure

statement contains, where and if applicable, the following types of information:

a.     the circumstances that gave rise to the filing of the bankruptcy petition;

b.     a complete description of the available assets and their value;

c.     the anticipated future of the debtor;

d.     the source of the information provided in the disclosure statement;

e.     a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

f.     the financial condition and performance of the debtor while in chapter 11;

g.     information regarding claims against the debtor's estate;

h.     a liquidation analysis identifying the estimated return that creditors would receive if the debtor's bankruptcy case was a case under chapter 7 of the Bankruptcy Code;

i.     the accounting and valuation methods used to produce the financial information in the disclosure statement;

j.     information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors or officers of the debtor;

k.     a summary of the plan of reorganization;

l.     an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

m.     the collectibility of any accounts receivable;

n.     any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan of reorganization;

o.     information relevant to the risks being taken by the creditors and interest holders;

p.     the actual or projected value that could be obtained from avoidable transfers;

q.    the existence, likelihood and possible success of nonbankruptcy litigation;

r.    the tax consequences of the plan of reorganization; and

s.    the relationship of the debtor with its affiliates.

See, e.g., In re Scioto Valley Mortgage Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988).

23.    The Disclosure Statement contains ample information with respect to the topics identified above where applicable, including, inter alia, information with respect to: (a) the terms of the Plan; (b) certain events preceding the Debtor's chapter 11 case; (c) the status of the Debtor's business during the course of the chapter 11 case; (d) estimates of the claims asserted or to be asserted against the Debtor's estate and the value of distributions to be received by holders of such claims; (f) the risk factors affecting the Plan; (g) the method and timing of distributions under the Plan; (h) a liquidation analysis identifying the estimated return that creditors would receive if the Debtor's bankruptcy case was a case under chapter 7 of the Bankruptcy Code; (i) the federal tax consequences of the Plan; and (j) appropriate disclaimers regarding the Court's approval of information only as contained in the Disclosure Statement. Accordingly, the Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and, on that basis, should be approved.

## Procedures for Tabulation of Votes to Accept or Reject the Plan

### *Approval of Form of Ballot*

24.    Bankruptcy Rule 3017(d) requires the Debtor to mail a form of ballot that substantially conforms to Official Form No. 14 only to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). The Debtor proposes to distribute

ballots to creditors[4] entitled to vote on the Plan in the form attached hereto as <u>Exhibit B</u> (the "Ballots"). The Ballots are based on Official Form No. 14, but have been modified to address the particular terms of the Plan. The Debtor proposes that Ballots will be distributed only to holders of Claims in Class 3 (Other Secured Claims) and Class 4 (General Unsecured Claims), as these are the only Classes entitled to vote to accept or reject the Plan.

25.     Class 1 (Other Priority Claims) and Class 2 (GECC Prepetition Claims) under the Plan are unimpaired and, therefore, are conclusively presumed to accept the Plan in accordance with section 1126(f) of the Bankruptcy Code. Additionally, Class 5 (Interests and Securities Subordinated Claims) is deemed to have rejected the Plan in accordance with section 1126(g) of the Bankruptcy Code (Class 5 together with Class 1 and Class 2, the "Non-Voting Classes"). Solicitation of the Non-Voting Classes under the Plan is not required and no Ballots have been proposed for creditors and interest holders in the Non-Voting Classes. The Debtor proposes to send a notice of non-voting status, substantially in the form attached hereto as Exhibit D, to the holders of Claims and Interests in the Non-Voting Classes.

***Voting Deadline for Receipt of Ballots***

26.     Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, the Court may fix a time within which the holders of claims or equity interests may accept or reject a plan. The Debtor anticipates commencing the Plan solicitation period by mailing the Solicitation Packages by no later than January 29, 2010. Based on this schedule, the Debtor proposes that to be counted as votes to accept or reject the Plan, all Ballots must be properly executed, completed and delivered to Kurtzman Carson Consultants, LLC

---

[4] Holders of Interests in the Debtor and Securities Subordinated Claims are deemed to have rejected the Plan. Accordingly, as explained below, their votes will not be solicited and they will not be provided ballots.

("KCC" or the "Balloting Agent")[5] either (a) by mail in the return envelope provided with each Ballot, (b) by overnight courier or (c) by personal delivery so that, in each case, such Ballots are received by the Balloting Agent no later than 5:00 p.m. (Pacific Standard Time) on February 26, 2010 (the "Voting Deadline").

27.    The Debtor submits that an approximate 25-day solicitation period provides sufficient time for creditors to make informed decisions to accept or reject the Plan and submit timely Ballots.

***Procedures for Vote Tabulation***

28.    Section 1126(c) of the Bankruptcy Code provides:

A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c). Further, Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a).

29.    Solely for purposes of voting to accept or reject the Plan — and not for the purpose of the allowance of, or distribution on account of, a claim or interest and without prejudice to the rights of the Debtor in any other context — the Debtor proposes that each claim within a class of claims or interests entitled to vote to accept or reject the Plan be temporarily

---

[5]    Pursuant to the Order Authorizing Employment of Kurtzman, Carson, Consultants, LLC as Claims, Noticing and Balloting Agent [Docket No. 43] the Court authorized the Debtor to retain KCC to provide assistance in the preparation, mailing and tabulation of ballots for the purpose of voting to accept or reject the Plan. Accordingly, KCC will serve as the Debtor's Balloting Agent in connection with the preparation, distribution and tabulation of the Ballots.

allowed in accordance with the following rules (collectively, the "Tabulation Rules"):

a. Unless otherwise provided in the Tabulation Rules described below, a claim will be deemed temporarily allowed for voting purposes in an amount equal to (i) the amount of such claim as set forth in a timely filed proof of claim or (ii) if no claim has been timely filed, the amount of such claim as set forth in the respective Debtor's Schedules of Assets and Liabilities, initially filed March 2, 2009 and any further amendments thereto (collectively, the "Schedules") if such claim is listed in the Schedules;

b. If a claim is deemed allowed in accordance with the Plan, such claim will be temporarily allowed for voting purposes in the deemed allowed amount set forth in the Plan;

c. If a claim for which a proof of claim has been timely filed is marked as contingent, unliquidated or disputed on its face it will be temporarily allowed for voting purposes only in the amount of $1.00;

d. If a claim has been estimated or otherwise allowed for voting purposes by order of the Court, such claim will be temporarily allowed for voting purposes in the amount so estimated or allowed by the Court;

e. If the Debtor has filed and served an objection to a claim, such claim will be temporarily allowed or disallowed for voting purposes in accordance with the relief sought in the objection or by order of the Court;

f. If a claim holder identifies a claim amount on its Ballot that is less than the amount otherwise calculated in accordance with the Tabulation Rules, the claim will be temporarily allowed for voting purposes in the lesser amount identified on such Ballot.

g. Any Ballot received from a holder of a claim listed as contingent, disputed, or unliquidated in the Debtor's Schedules will not be counted unless the holder of such claim (including claims held by a governmental unit as defined in section 101(27) of the Bankruptcy Code) filed a proof of claim on or before August 24, 2009 at 5:00 p.m. (Pacific Daylight Time) (the "Bar Date").

30. The Debtor believes that the proposed Tabulation Rules will establish a fair and equitable voting process. Nevertheless, if any claimant seeks to challenge the allowance

of its claim for voting purposes in accordance with the Tabulation Rules, the Debtor proposes that such claimant be required to file a motion, pursuant to Bankruptcy Rule 3018(a), for an order temporarily allowing such claim in a different amount or classification for purposes of voting to accept or reject the Plan (a "Rule 3018 Motion") and serve such motion on the Debtor so that it is received no more than the later of (a) ten days after the date of service of the Confirmation Hearing Notice (as such term is defined below) and (b) ten days after the date of service of a notice of an objection, if any, to the underlying claim.    In accordance with Bankruptcy Rule 3018, the Debtor further proposes that any Ballot submitted by a creditor that files a Rule 3018 Motion will be counted solely in accordance with the Debtor's proposed Tabulation Rules and the other applicable provisions contained herein unless and until the underlying claim is temporarily allowed by the Court for voting purposes in a different amount, after notice and a hearing.    The Debtor reserves the right to request that the Bankruptcy Court modify the voting rules or procedures if necessary or appropriate.

31.    In tabulating the Ballots, the Debtor requests that the following additional procedures be utilized:  (a) any Ballot that is properly completed, executed and timely returned to the Balloting Agent, but that does not indicate an acceptance or rejection of the Plan, will not be counted either as a vote to accept the Plan or a vote to reject the Plan; (b) if a creditor casts more than one Ballot voting the same claim before the Voting Deadline, the last Ballot received before the Voting Deadline will be deemed to reflect the voter's intent and thus will supersede any prior Ballots and (c) creditors will be required to vote all of their claims within a particular Class under the Plan either to accept or reject the Plan and may not split their votes; thus, a Ballot (or a group of Ballots within a Plan Class received from a single creditor) that partially rejects and partially accepts the Plan will not be counted.

**Confirmation Hearing and Notice, Record Date
and Procedures for Distribution of Solicitation Packages**

*The Confirmation Hearing*

32.    Bankruptcy Rule 3017(c) provides:

On or before approval of the disclosure statement, the court shall
fix a time within which the holders of claims and interests may
accept or reject the plan and may fix a date for the hearing on
confirmation.

Fed. R. Bankr. P. 3017(c).

33.    In accordance with Bankruptcy Rule 3017(c) and consistent with the

Debtor's proposed solicitation schedule, the Debtor requests that the Confirmation Hearing be

scheduled for not later than March 19, 2010. The Confirmation Hearing may be adjourned from

time to time by the Court without further notice except for an announcement made at the

Confirmation Hearing or any adjourned confirmation hearing. The Debtor further proposes that

objections, if any, to the confirmation of the Plan must: (a) be in writing; (b) state the name and

address of the objecting party and the nature of the claim or interest of such party; (c) state with

particularity the basis and nature of any objection to the confirmation of the Plan; and (d) be filed

with the Court and served on (i) counsel to the Debtor, O'Melveny & Myers LLP, 400 S. Hope

Street, Los Angeles, California 90071 (Attention: Stephen H. Warren, Esq. and Karen Rinehart,

Esq.) and Richards, Layton & Finger, P.A., One Rodney Square, P.O. Box 551, Wilmington,

Delaware 19801, (Attention: Michael J. Merchant, Esq. and Lee E. Kaufman, Esq.), (ii) Office of

the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware

19801 (Attention: David L. Buchbinder, Esq.); and (iii) counsel to the Official Committee of

Unsecured Creditors, Cooley Godward Kronish LLP, The Grace Building, 1114 Avenue of the

Americas, New York, New York, 10036-7798 (Attention: Lawrence Gottlieb, Esq. and Michael

Klein, Esq.) and Benesch Friedlander Copland & Aronoff, 222 Delaware Avenue, Suite 801, Wilmington, Delaware 19801 (Attention: Bradford J. Sandler, Esq.) so that they are received no later than 4:00 p.m. (prevailing Eastern time) on February 23, 2010, or such other date established by the Debtor that is at least 25 days after the commencement of the solicitation period (the "Confirmation Objection Deadline").

34.    Bankruptcy Rule 2002(b) requires at least 28 days' notice by mail to all creditors and indenture trustees of the time set for filing objections to confirmation of a chapter 11 plan and the hearing to consider confirmation of a chapter 11 plan.  Bankruptcy Rule 2002(d) requires that equity security holders be given notice of the foregoing in the manner and the form directed by the Court.  In accordance with Bankruptcy Rules 2002 and 3017(d), the Debtor proposes to serve on all creditors and equity security holders entitled to receive such documents as set forth herein, as part of the Solicitation Packages and not less than 28 days prior to the Confirmation Objection Deadline, a copy of a notice substantially in the form attached hereto as Exhibit C1 (the "Confirmation Hearing Notice") setting forth:  (a) the Voting Deadline for the submission of Ballots to accept or reject the Plan; (b) the deadline for filing Rule 3018 Motions; (c) the Confirmation Objection Deadline; and (d) the time, date and place of the Confirmation Hearing.

35.    In addition to mailing the Confirmation Hearing Notice as part of the Solicitation Packages, the Debtor proposes to publish a notice substantially in the form of the notice attached hereto as Exhibit C2 not less than 28 days before the Confirmation Hearing once in the national edition of *The Wall Street Journal* and in such other local newspapers and/or trade publications as the Debtor deems appropriate.

### *The Record Date*

36.    Bankruptcy Rule 3017(d) provides that the "date [an] order approving the disclosure statement is entered," or such other date established by the court, is the record date for determining the "holders of stock, bonds, debentures, notes, and other securities" entitled to receive the materials specified in Bankruptcy Rule 3017(d), including ballots for voting on a plan of reorganization.  See Fed. R. Bankr. P. 3017(d).  Accordingly, the Debtor proposes that the Court establish January 20, 2010, the same day as the proposed date of the Disclosure Statement Hearing, as the record date pursuant to Bankruptcy Rule 3017(d) for purposes of determining which creditors are entitled to receive Solicitation Packages and, where applicable, vote on the Plan (the "Record Date").

37.    With respect to a transferred claim, the Debtor further proposes that the transferee will be entitled to receive a Solicitation Package and cast a Ballot on account of such transferred claim only if, by the Record Date, (a) all actions necessary to effect the transfer of the claim pursuant to Bankruptcy Rule 3001(e) have been completed or (b) the transferee files (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer.  Each transferee will be treated as a single creditor for purposes of the numerosity r equirements in section 1126(c) of the Bankruptcy Code and the other voting and solicitation procedures set forth herein.

### *The Solicitation Package*

38.    Bankruptcy Rule 3017(d) identifies the materials that must be provided to holders of claims and equity interests for purposes of soliciting their votes and providing adequate notice of the hearing on confirmation of a plan of reorganization:

Upon approval of a disclosure statement, — except to the extent

that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders — the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,

(1)    the plan or a court-approved summary of the plan;

(2)    the disclosure statement approved by the court;

(3)    notice of the time within which acceptances and rejections of such plan may be filed; and

(4)    such other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders pursuant to Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.

Fed. R. Bankr. P. 3017(d).

39.    The Solicitation Package, comprised of the materials required to be provided to holders of claims and equity interests under Bankruptcy Rule 3017(d), will be mailed to the parties identified in paragraph 33 below after the Court has approved the contents of the Disclosure Statement as containing adequate information, as required by section 1125 of the Bankruptcy Code. Specifically, with regard to holders of claims entitled to vote to accept or reject the Plan, the Debtor proposes to mail or cause to be mailed Solicitation Packages containing copies of: (a) the Confirmation Hearing Notice; (b) the Disclosure Statement (together with the exhibits thereto, including the Plan, that have been filed with the Court before

the date of the mailing, in either hard copy or CD/ROM format as the Debtor in its sole discretion shall deem appropriate); and (c) an appropriate form of Ballot, a Ballot return envelope and such other materials as the Court may direct.  Consistent with Bankruptcy Rule 3017(d), the Debtor proposes that Solicitation Packages for holders of claims in the Non-Voting Classes under the Plan include only a notice of non-voting status substantially in the form in attached hereto as Exhibit D (the "Notice of Non-Voting Status") and the Confirmation Hearing Notice.  As set forth herein, solicitation of the Non-Voting Classes under the Plan is not required pursuant to sections 1126(f) and 1126(g) of the Bankruptcy Code.

40.     The Solicitation Packages containing the materials indicated above will be mailed not less than 28 days prior to the Confirmation Objection Deadline to: (a) all persons or entities that have filed proofs of claim or equity interests on or before the Record Date; (b) all persons or entities listed in the Schedules as holding liquidated, noncontingent, undisputed claims as of the Record Date (or their transferees or Record Holders); (c) all other known holders of claims or equity interests against the Debtor (or their transferees or Record Holders, where applicable), if any, as of the Record Date; (d) all parties in interest that have filed notices in accordance with Bankruptcy Rule 2002 in the Debtor's chapter 11 case on or before the Record Date; and (e) the U.S. Trustee.

41.     The Debtor will not be required to mail Solicitation Packages to any individual or entity at an address from which the Disclosure Statement Notice was returned by the United States Postal Service or overnight delivery carrier as undeliverable unless the Debtor was provided with an accurate address by such individual or entity prior to the Record Date.

42.     The Debtor submits that the foregoing procedures for providing notice of the Confirmation Hearing, the Confirmation Objection Deadline and related matters fully comply

with Bankruptcy Rules 2002 and 3017.  Accordingly, the Debtor requests that the Court approve

such procedures as appropriate and in compliance with the requirements of the Bankruptcy Code,

the Bankruptcy Rules and the Local Rules.

### Notice

43.    On January 22, 2009, the United States Trustee appointed the Official

Committee of Unsecured Creditors.  No trustee, examiner or other committee has been appointed

in this case.  Notice of this Motion has been provided to:  (1) the Office of the United States

Trustee for the District of Delaware, (2) counsel for General Electric Capital Corporation, agent

for the Debtor's post-petition secured lenders; (3) counsel to the Official Committee of

Unsecured Creditors; and (4) all parties who have timely filed requests for notice under

Bankruptcy Rule 2002.

WHEREFORE, the Debtor respectfully requests that the Court enter an order,

substantially in the form attached hereto as Exhibit E:  (i) approving the Disclosure Statement

pursuant to section 1125 of the Bankruptcy Code; (ii) establishing procedures for solicitation and

tabulation of votes to accept or reject the Plan, as described herein, including approval of (a) the

form of the Ballots for submitting votes on the Plan attached hereto as Exhibit B (including the

proposed instructions attached to the Ballots), (b) the Voting Deadline for the submission of

Ballots, (c) the contents of the Solicitation Packages, (d) the Record Date for Plan voting, (e) the

Tabulation Rules and other vote tabulation procedures described herein; (iii) scheduling the

Confirmation Hearing and approving related notice procedures; and (iv) granting such other and

further relief as the Court may deem proper.

Dated: December 22, 2009
        Wilmington, Delaware

Respectfully submitted,

_____
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Lee E. Kaufman (No. 4877)
Drew G. Sloan (No. 5069)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

Stephen H. Warren (*admitted pro hac vice*)
Karen Rinehart (*admitted pro hac vice*)
Alexandra B. Redwine (*admitted pro hac vice*)
Ana Acevedo (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071
Telephone:  (213) 430-6000
Facsimile:  (213) 430-6407

*Attorneys for the Debtor*
*and Debtor-in-Possession*